UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DORIS ANDERSON                           CIVIL ACTION

VERSUS                                   NO: 11-992

MCDONALD'S RESTAURANTS of                SECTION: R
LOUISIANA, INC.

## ORDER AND REASONS

This is an employment discrimination action filed by plaintiff Doris Anderson against her former employer, McDonald's Restaurants of Louisiana, Inc. Anderson alleges that McDonald's discriminated against her on the basis of her race and gender and retaliated against her for a previous complaint of discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended.

McDonald's filed a motion for summary judgment in which it contends that Anderson cannot establish a prima facie case of discrimination or retaliation. McDonald's also argues that, even if Anderson could establish a prima facie case for each claim, she has no evidence to rebut McDonald's legitimate, nondiscriminatory reasons for taking the employment actions at issue. Because the Court finds no remaining issues of material fact and that McDonald's is entitled to judgment as a matter of law, the Court grants the motion.

**I. BACKGROUND**

Doris Anderson, an African-American female, was hired by McDonald's on September 28, 2008, as a Second Assistant Manager at a McDonald's restaurant located in Mandeville, Louisiana.[1] During her orientation, Anderson went through training and received several corporate policies, including McDonald's Policy Against Discrimination and Harassment (the "EEO and Non-Harassment Policy").[2] The EEO & Non-Harassment Policy states that "discrimination or harassment of a McDonald's employee...will not be tolerated" and that "[e]mployees who violate this policy will be disciplined up to and including termination."[3] Under the EEO and Non-Harassment Policy, employees are encouraged and required to report harassment or discriminatory conditions in certain circumstances and are instructed on how to do so.[4] On September 30, 2008 (and again on November 20, 2009), Anderson signed an acknowledgment promising to comply with McDonald's corporate policies at all times.[5]

After working at McDonald's for more than a year, in December 2009, Anderson was disciplined and suspended, and she

---

[1] R. Doc. 30-6 at 2-3.

[2] R. Doc. 30-7; R. Doc. 30-5 at 7.

[3] R. Doc. 30-9 at 2.

[4] *Id.* at 2-4.

[5] R. Doc. 30-8; R. Doc. 30-10.

was ultimately fired on January 8, 2010.[6]  The parties dispute many of the facts that led McDonald's to discipline, suspend and terminate Anderson.

Anderson alleges that McDonald's actions against her were discriminatory and retaliatory.  In her deposition, Anderson testifies that she started to experience racial and gender discrimination in November 2009, when Andre Zakkour, a white male, became acting manager.[7]  Anderson testifies that Zakkour told employees they were "running the store ghetto", sought to eliminate black female managers, and used the "N" word in front of her and other employees.[8]  Anderson says she called a McDonald's "800" hotline in early 2009 to register a complaint but was instructed to file a complaint with Karina McCrossen, her human resources superior.[9]  Anderson testifies that she reported the comments to McCrossen and that McCrossen met with her at the store in December 2009 and told Anderson that "they would be making some changes".[10]

McDonald's, on the other hand, maintains that it possesses no record of these complaints and points to evidence indicating

---

[6] R. Doc. 30-13;  R. Doc. 30-16.

[7] R. Doc. 30-5 at 9.

[8] R. Doc. 31-2 at 2; R. Doc. 30-5 at 9-10.

[9] R. Doc. 31-2 at 13.

[10] *Id.* at 14,

that it took the actions against Anderson because she failed to meet her work responsibilities and violated the EEO & Non-Harassment Policy. According to the Affidavit of Zakkour, in early December 2009, Anderson received verbal discipline for "allow[ing] a non-managerial employee to use her keys to access a secure exit to the restaurant."[11] A McDonald's Disciplinary Action Form indicates that Anderson was disciplined again on December 23, 2009, for allowing employees to work overtime without receiving the necessary approval from her supervisor.[12] A subsequent Disciplinary Action Form dated December 28, 2009, indicates that Anderson was suspended for one week without pay for closing the restaurant early on December 25, 2009, in violation of her supervisor's orders.[13]

Anderson was ultimately discharged for violating the EEO & Non-Harassment Policy by sending two threatening text messages to fellow manager Geraldine Varnado ("Varnado") after Varnado had reported Anderson for violating a company rule by letting another employee use her manager's code to get a free meal.[14] Varnado states in her affidavit that she observed Mary Korach, a McDonald's crew person, using a Manager Code to ring up a free

---

[11] R. Doc. 30-11 at 2.

[12] R. Doc. 30-12.

[13] R. Doc. 30-13

[14] R. Doc. 30-2 at 5.

4

meal, which is a violation of McDonald's policy.[15]  Varnado states that Korach informed her that it was Anderson who provided Korach with the Manager Code to use to receive a free meal.[16] The affidavits of Varnado and Zakkour state that Varnado reported the incident to Zakkour as she was required to do under company policy.[17]  According to the affidavit of Varnado, shortly after reporting Anderson, Varnado received two text messages from Anderson reading, "Jesus sits up high and looks down below", and "U next u are a evil bitch!"[18]  Varnado states that she showed the text messages to Zakkour and, upon his request, forwarded them to him.[19]  According to the affidavits of Zakkour and McCrossen, Zakkour promptly informed McCrossen about the threatening text messages.[20]  Zakkour states that McCrossen instructed him to investigate Varnado's complaint, leading him to review the messages and confirm that they were sent from Ms. Anderson's telephone number.[21]  Zakkour states in his affidavit that

---

[15] R. Doc. 37, Ex. 14 at 2.

[16] *Id.*

[17] *Id.*; R. Doc. 30-11 at 4.

[18] R. Doc. 37, Ex. 14 at 2; R. Doc. 30-11 at 3.

[19] R. Doc. 37, Ex. 14 at 2.

[20] R. Doc. 30-11 at 3; R. Doc. 30-15 at 2.

[21] R. Doc. 30-11 at 3.

5

> As a result of this investigation and confirmation of Ms. Anderson's conduct, I determined, in consultation with Ms. McCrossen, that Anderson's actions violated company policy. Given the nature of the text messages and Ms. Anderson's recent disciplinary history, Ms. McCrossen and I concluded that we had no choice but to terminate Ms. Anderson's employment based on her violation of McDonald's EEO & Non-Harassment Policy.[22]

McCrossen states that she "personally reviewed the text messages at issue," "concluded and honestly believed that Ms. Anderson did, in fact, send the harassing text messages," "made a separate and independent determination that Ms. Anderson's actions ... clearly violated company policy," and "concluded that McDonald's had no choice but to terminate Anderson's employment."[23]

According to Zakkour's affidavit, he and Jason Bowden, Anderson's immediate supervisor, met with Anderson on January 8, 2010, and informed her that the company had decided to terminate her based on the harassing text messages she sent to Varnado.[24] Zakkour's account is supported by a McDonald's Disciplinary Action Form describing Anderson's termination, signed by Zakkour and Bowden on January 8, 2010.[25] Zakkour also states that Anderson "did not make any allegation of harassment, retaliation or discrimination during her termination meeting."[26] A

---

[22] *Id.*

[23] R. Doc. 30-15 at 3.

[24] R. Doc. 30-11 at 4.

[25] R. Doc. 30-16.

[26] *Id.*

6

McDonald's human resources report containing records of complaints made by Anderson through the company's human resources complaint telephone line refers to Anderson's termination "for harassing the hourly manager."[27] The report contains only one complaint that predates Anderson's termination, and that entry indicates that Anderson complained that her one-week suspension was unfair because the store "isn't well staffed, and she should have been trained properly on scheduling."[28] McDonald's also submits an email sent from McCrossen to McDonald's management on January 11, 2010, in which McCrossen describes the event's leading to Anderson's termination, including that Anderson was terminated for sending the harassing text messages.[29]

## II. STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). In an employment discrimination case, "the focus must be on whether a genuine issue exists as to whether the defendant

---

[27] R. Doc. 30-17 at 2.

[28] *Id.*

[29] R. Doc. 30-14 at 2.

intentionally discriminated against the plaintiff." *Simien v. Chem. Waste Mgmt., Inc.*, 30 F. Supp. 2d 939, 942 (W.D. La. 1998) *aff'd,* 174 F.3d 199 (5th Cir. 1999)(citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 447 (5th Cir. 1996); *Armstrong v. City of Dallas*, 997 F.2d 62, 65-66 (5th Cir. 1993)). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)(quoting C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* 2d § 2738 (1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or

"showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (citing *Celotex*, 477 U.S. at 332).

**III. DISCUSSION**

**A.    Title VII Discrimination**

A plaintiff who seeks to prove that her employer discriminated against her in violation of Title VII can do so by

submitting either direct evidence of intentional discrimination or, more commonly, circumstantial evidence. *See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Because Anderson seeks to establish her claim by circumstantial evidence, the three-part framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), applies. First, the plaintiff must make out a prima facie case of employment discrimination by proving that she:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). If the plaintiff carries her burden, a presumption arises that the employer unlawfully discriminated against her. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The defendant, in turn, may rebut this presumption by articulating "a legitimate, nondiscriminatory reason for its decision." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Finally, if the defendant produces evidence of a nondiscriminatory reason for the discharge, the burden shifts back to the plaintiff to prove that "the employer's proffered reason is not true but instead is a pretext for the real discriminatory ... purpose." *McCoy*, 492 F.3d at 557. The

plaintiff may do so either "through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence,'" meaning that the explanation "is not the real reason for the adverse employment action." *Laxton*, 333 F.3d at 578 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, (2000)).

*(1) Prima Facie Case*

The first three elements of a prima facie case of Title VII discrimination are not contested. McDonald's concedes that Anderson is a member of a protected group and that it suspended and then discharged her from her position.[30] To establish the second element, Anderson must show that she was qualified for the position she held. In the Fifth Circuit, "the fact that a plaintiff was hired initially indicates that [s]he had the basic qualifications," and a plaintiff must merely continue to possess those qualifications. *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1505-06 (5th Cir. 1988). Defendants do not point to anything in the record suggesting that Anderson no longer

---

[30] R. Doc. 30-3 at 1. Only Anderson's suspension and termination, not written and verbal discipline she received, qualify as adverse employment actions under Title VII. *Harrison v. Corrections Corp. of America*, 476 Fed.App'x. 40, 43 (5th Cir. 2012)("With respect to claims of discrimination, in accordance with Title VII's language, [Fifth Circuit] precedent only recognizes ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating as actionable adverse employment actions.")

11

possessed her initial qualifications.  Accordingly, the Court
finds that Anderson at least created a genuine issue as to the
first three elements of a prima facie case.

To establish the fourth element, Anderson must show that
"she was replaced by someone outside [her] protected group or was
treated less favorably than other similarly situated employees
outside the protected group." *McCoy,* 492 F.3d at 551.  When
violation of a work rule is the apparent reason for the adverse
employment action, "a Title VII plaintiff may establish a prima
facie case by showing 'either that he did not violate the rule or
that, if he did,...employees [outside the plaintiff's protected
class] who engaged in similar acts were not punished similarly.'"
*Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir.
1995)(quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968
(5th Cir. 1980)).  McDonald's says Anderson was fired because she
violated the EEO & Non-Harassment Policy rule prohibiting
harassment of fellow employees when she sent threatening text
messages to her coworker Varnado.  To prove she did not violate
the work rule, Anderson points to her deposition testimony that
she did not send the text messages to Varnado and did not even
know Varnado's phone number.[31]  The Court assumes without
deciding that Anderson's testimony creates a genuine issue as to

---

[31] R. Doc. 31-2 at 17.

the whether Anderson sent the harassing text messages and violated the EEO & Non-Harassment Policy.

*(2) The Defendant's Nondiscriminatory Justification*

Even assuming Anderson's deposition testimony creates a prima facie case, Anderson has failed to introduce sufficient evidence of pretext on the part of McDonald's, which has offered substantial evidence of a legitimate, nondiscriminatory reason for plaintiff's discharge. *McDonnell-Douglas Corp.*, 311 U.S. at 802. McDonald's contends that its decision to fire Anderson was based solely on its conclusion, following independent investigations by McCrossen and Zakkour, that Anderson sent threatening text messages to Varnado and violated the EEO & Non-Harassment Policy.[32] Anderson attempts to demonstrate pretext based on nothing more than her assertion that she did not send the harassing text messages and by insisting, without substantiation, that her termination was the result of discrimination and retaliation by Zakkour and McDonald's.

To begin with, Anderson's testimony is inconsistent with Varnado's phone records indicating that text messages were sent from Anderson's phone to Vardnardo's phone on December 27, 2009 and December 28, 2009.[33] Further, whether McDonald's was wrong

---

[32] R. Doc. 30-3 at 14.

[33] R. Doc. 37, Ex. 14 at 2.

to believe that Anderson sent the text messages "is irrelevant, as [e]ven an employer's incorrect belief in the underlying facts - or an improper decision based on those facts - can constitute a legitimate, non-discriminatory reason for termination." *Amezquita v. Beneficial Texas, Inc.*, 264 F. App'x 379, 386 (5th Cir. 2008). A "fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith." *Cervantez v. KMGP Services Co. Inc.*, 349 F. App'x 4, 10 (5th Cir. 2009).

Evidence in the record indicates that the decision makers responsible for terminating Anderson reasonably believed that she sent the offending text messages. Varnado indicates in her affidavit that she knew Anderson sent the text messages and that she reported them and forwarded them to Zakkour.[34] As Varnado reported to her superiors, she believed that the messages were in response to Varnado reporting Anderson for allowing another employee to use her Manager Code for a free meal.[35] The affidavits of McCrossen and Zakkour indicate that Varnado showed and forwarded the text messages to Zakkour, and Zakkour and McCrossen both concluded that Anderson sent the messages and should be terminated for sending them.[36] The descriptions of

---

[34] R. Doc. 37, Ex. 14 at 2.

[35] *Id.*

[36] R. Doc. 30-15; R. Doc. 30-11.

14

their investigations and decisions are substantiated by McCrossen's January 11, 2010 email to McDonald's management[37], the Disciplinary Action Form created when Anderson was terminated,[38] and the McDonald's human resources report concerning Ms. Anderson[39], all of which indicate that McDonald's believed Anderson had violated the company's harassment policy. Zakkour's affidavit and the Disciplinary Action Form indicate that Zakkour and Bowden met with Anderson and informed her that she was being fired based on harassing text messages they believed she sent to Varnado.[40] Through the presentation of significant evidence of a legitimate, nondiscriminatory reason for terminating Anderson's employment, McDonald's has discharged its burden of production. *Mayberry*, 55 F.3d at 1091.

Anderson fails to rebut McDonald's asserted reasons for her termination. She has not submitted any evidence, beyond her own testimony denying that she sent the text messages, that McDonald's did not act in good faith and did not reasonably believe she sent the texts. *Cervantez,* 349 F. App'x at 10. A plaintiff cannot establish pretext solely by presenting her own testimony. *Amezquita* 264 Fed.App'x. at 386. Neither can she

---

[37] R. Doc. 30-14.

[38] R. Doc. 30-16.

[39] R. Doc. 30-17.

[40] R. Doc. 30-11 at 4; R. Doc. 30-16.

establish pretext "essentially by reasserting [her] prima facie evidence." *Mayberry*, 55 F.3d at 1091. Since Anderson fails to present evidence, aside from her own testimony, to rebut McDonald's evidence detailing its decision to terminate her based on the belief that she violated company policy by sending the text messages, Anderson cannot establish pretext and is unable to defeat summary judgment.

**B. Retaliation Claim**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee who has opposed an employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, the plaintiff must put forth evidence that: (1) the plaintiff engaged in an activity protected by Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal connection exists between the protected activity and the adverse employment action. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate ... non-retaliatory reason for its employment action." *Id.* If the employer meets its burden of production, the plaintiff then bears the burden of proving

that the employer's reason is a pretext for the actual retaliatory reason. *Id.*

The Court assumes without deciding that Anderson has established a prima facie case of retaliation. But as discussed in reference to plaintiff's Title VII discrimination claim, McDonald's has established a legitimate, nondiscriminatory reason for Anderson's discharge. Because Anderson fails to adduce any evidence beyond her own deposition that McDonald's did not reasonably believe she violated the company's harassment policy and acted on that belief in good faith, summary judgment in favor of McDonald's is appropriate. *Cervantez*, 349 F. App'x at 10.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion.

New Orleans, Louisiana, this 21st day of November, 2012.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE